## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **No. 21-CR-10354 (11)-WGY** |
| | ) | |
| **JONATHAN DAROSA** | ) | |

### SENTENCING MEMORANDUM
### ON BEHALF OF JONATHAN DAROSA

It is imperative that Mr. DaRosa enter drug – and potentially mental health treatment – as soon as possible.  Mr. DaRosa has accepted responsibility for the charges in the instant case pursuant to a plea agreement on January 28, 2025.  Should this court accept the agreement, Mr. DaRosa will be sentenced in the range of 46-57 months. Including the time spent in state custody on the firearm charge, at the time of sentencing Mr. DaRosa will have been in custody for 43 months:

– 04/08/2021 to 10/20/2021: held in state custody on related state case, docket No.: 2184CR0469, totaling 6 months, 12 days;

– 04/15/2022 to 5/1/2025: detained in federal custody, totaling 36 months, 15 days.

PSR, p. 2.

As this court is aware, as a result of so-called good time, BOP prisoners serve approximately 85% of any given sentence, with the last 4-6 months in a community confinement facility. Assuming the worst case sentencing scenario, 85% of a 57 month sentence is slightly less than 48.5 months, and he would be transferred to Coolidge House at 42.5-45.5 months to serve the remainder of the sentence. However, if sentenced to 57 months, Mr. DaRosa would remain in BOP custody for at least a month while it calculates his sentence, as just set out.

It is in this context, that Mr. DaRosa requests that this court sentence him to 46 months, with the remaining three (3) months to be served in home confinement while BOP calculates the sentence requirements, which is still effectively longer than he would serve if sentenced to 57 months. As a condition of home confinement, Mr. DaRosa requests the ability to participate in out-patient drug treatment.

Jonathan DaRosa was born on April 7, 1993, in Boston, one of Joao and Ana DaRosa's four children.

While Mr. DaRosa was fed and clothed as a child, his childhood

and teenage years were not without difficulties.  Mr. DaRosa's father
had a dangerous temper, was physically abusive, and unfaithful to his
mother.  The DaRosa family lived together in Boston until Mr. DaRosa
was 11 years old, at which time his parents divorced, and his mother
took him and one of his three sisters to live with an uncle in Michigan.

Mr. DaRosa was first involved with the criminal justice system
while living in Michigan as a young teenager.  He was placed on
probation at age 14.  Around this time that he began to drink and use
drugs.  The arc of Mr. DaRosa's life has been limned by chronic drug
addiction.

Mr. DaRosa's parents reconciled approximately three years later,
when at 14, his mother returned to Boston to live again with his father.
Upon returning to Boston, Mr. DaRosa made friends in the Cameron
Street neighborhood, near where he lived and went to school.  He spent
a lot of time hanging out and smoking marijuana with others around the
neighborhood.  While hanging out with this group as a teenager, Mr.
DaRosa was standing next to his friend when the friend was shot.
Although his friend survived the shooting, the trauma from this

3

incident, and fear for his safety, stayed with Mr. DaRosa, expressed in multiple charges for possession of a handgun.

Mr. DaRosa's history of chronic substance abuse dates back to age 12, when he began drinking alcohol and smoking marijuana. He was introduced to "club drugs" at age 14. By age 17, Mr. DaRosa began abusing cocaine, and by 19, he was abusing Percocet, fentanyl, and other opiates. At the time of his arrest in April 2022, Mr. DaRosa was abusing Percocet, fentanyl, and marijuana on a daily basis. He was also using cocaine several times a month, using club drugs about four times a year, and occasionally drinking alcohol.

Mr. DaRosa has voluntarily sought treatment in the past. He participated in two programs, Gavin House in 2021 and High Point in 2015. After participating in treatment at Gavin House, he maintained sobriety for a period of two weeks. Having access to opiates catalyzed his relapse. It is obvious that Mr. DaRosa needs the extended oversight which will be provided by supervised release. While at Wyatt Detention Facility, Mr. DaRosa requested transfer to the Rhode Island state prison so that he could begin assisted treatment (MAT) with suboxone, which

he had found to be successful in the past. This court granted the request, and after he began the regimen in Rhode Island, he was transferred back to Wyatt, where he remained in the suboxone treatment program.[1]

Also at Wyatt, Mr. DaRosa successfully participated in many programs related to battling addiction, and the triggers to use drugs:

1.    What is Addiction, completed 11/15/2023, Ex. A, p. 1;[2]

2.    Smart Recovery, completed 3/2024, Ex. A, p. 2;

3.    Manage Stress, completed 6/29/2023, Ex. A, p. 3;

4.    Rational Thinking, completed 5/2022, Ex. A, p. 4;

5.    Living With Others, completed 6/2022; Ex. A, p. 5;

6.    Letter to my Younger Self, completed 5/27/2023, Ex. A, p. 6;

7.    Parenting Story book for dads, completed 5/2023, Ex. A, p. 7;

8.    Adjustment to Incarceration, completed 5/2022; Ex. A, p. 8.

9.    Mr. DaRosa also participated in a voluntary restorative

---

[1] The transfer to Rhode Island was necessary because while Wyatt will continue treatment for those already receiving suboxone when admitted, it will not initiate treatment.

[2] The Wyatt program certificates are attached as Exhibit A.

justice program at Wyatt, the Building on Self Substance, or "B.O.S.S." program. PSR, ¶ 74, p. 22. It is comprised of detainees who voluntarily meet several times a week to discuss topics related to restorative justice, including activities related to self-betterment and growth, healing, educating one another, and giving back to the community. "The groups include short assignments, group discussions, and working together in teams to seek opportunities for growth, healing, and teaching one another with the goal to become better selves and give back to the communities." *Id.*

Upon transfer to the Franklin County House of Correction, where he remains, Mr. DaRosa voluntarily enrolled in the Men's Treatment Unit, where he currently receives addiction-related treatment in addition to suboxone. Detainees in this unit take part in an intensive treatment program. Mr. DaRosa is subject to a weekly random urine test. A copy of the Treatment Unit brochure, which contains the application, as well as descriptions of the programs offered, is attached as Exhibit B.

While incarcerated pending trial herein, Mr. DaRosa suffered an immense loss when Suzete Mendes, his girlfriend of 10 years, virtually all of his adult life, was killed in a car crash on August 24, 2022.  Ms. Mendes was pregnant with Mr. DaRosa's child at the time of her death. The loss has been very difficult for Mr. DaRosa.  He experiences depression, and a strong sense of guilt over Ms. Mendes' death, as he wonders if, but not for his incarceration, she would still be alive, as would their child.  Upon release, Mr. DaRosa is interested in future dual diagnosis substance abuse treatment, and potentially mental health evaluation and treatment.

His criminal record and the instant offense conduct reflect Mr. DaRosa's long standing drug dependency.   He was recorded conducting controlled purchases of drugs with a cooperating witness on February 7, 2022, and March 1, 2022.

On February 7, 2022, Mr. DaRosa met the cooperating witness in the parking lot of a liquor store.  The two sat in the witness' video-and-audio-wired car as they conducted the transaction.  As Mr. DaRosa finished counting the money, he asked if he could keep two of the

Percocet pills.[3]  Mr. DaRosa was desperate to get a fix for himself.  Later

that same day, Mr. DaRosa sold the same witness powder cocaine.  In

the recording of the first transaction that day, Mr. DaRosa attempted to

persuade the witness to split with him some of the cocaine the witness

sought to purchase, again manifesting his need for a fix of anything.

On March 1, 2022, Mr. DaRosa was on his way to the Dimock

detox facility with his mother when the same confidential witness called

him repeatedly, trying to set up a time to meet and set up the purchase.

Despite wanting treatment, for Mr. DaRosa the lure of intoxication

proved too strong.  He was supposed to receive $100 and some cocaine as

part of the transaction, but received neither.[4]  Cocaine was not Mr.

DaRosa's drug of choice, which was fentanyl and any other opioid, but he

became desperate for a fix when the opportunity presented itself to him.

---

[3] "Percocet . . . consists of a combination of the opioid oxycodone
and the analgesic acetaminophen. . . [It] . . . has a high potential for
abuse."  Hein, Megan, Dangers of Smoking and Snorting Percocet,
https://www.alinalodge.org/benzo-abuse/dangers-of-snorting-percocet/.

[4] The PSR accurately notes that $2400 was tendered for the drugs,
with the incorrect implication that Mr. DaRosa received the money.  In
fact, the video reveals that he was a broker only; he exited the car, and
the actual seller took his place in the car and received the money.

The day after this transaction, March 2, 2021, Mr. DaRosa entered the Dimock detox program, which he completed, only to fall off the wagon within weeks.

Mr. DaRosa does not have a high school diploma or GED and only completed his schooling through the eleventh grade. While at Wyatt, he was employed as a unit worker. In the past, Mr. DaRosa has held various jobs, including multiple positions working with automobiles. Today, Mr. DaRosa has a close relationship with his parents and sisters. Upon his release, Mr. DaRosa plans to reside with his parents and one of his sisters at the family home, located at 6 Whittemore Street in Dorchester. Mr. DaRosa's mother works two jobs to support the family; his father is disabled due to a stroke. His five year old nephew, Mr. Davis' single-parent sister's son, gets out of school at 3:00; his grandmother gets out of her school-related transportation job at 4:00, and his mother gets off work at 5:00. Mr. DaRosa's presence in the home is keenly awaited, for amongst other things, to assist his nephew.

In the future, Mr. DaRosa aspires to work in the recovery field helping others struggling with substance abuse, and to one day open a

9

sober house for women in honor of his late girlfriend. The weight of her loss led Mr. DaRosa to the realization that he wants nothing more than to leave behind his old ways and simply live a better life, not only for himself, but for her, so that he can accomplish the dreams and plans that they shared. Another goal is to eventually move away from Boston to leave behind the people, places, and things that triggered drug use and addiction, something that one of Mr. DaRosa's sisters would like to do with him, as she has a business opportunity in Georgia that she is planning to pursue. PSR  67, p. 21. Mr. DaRosa is committed to making meaningful change by staying away from whatever and whomever may lead him to relapse, including completely starting over.

What is most crucial at this point is that Mr. DaRosa continue substance abuse treatment. While he has been actively engaged in substance abuse treatment while incarcerated, he needs to receive treatment designed for the real world, rather than prison, to teach him coping skills for life outside of a detention facility. Mr. DaRosa is currently living in a controlled and regimented environment, but the outside world, where drugs and alcohol can be readily accessed, is the

challenge. It is in the interest of justice, and broader societal imperatives, that Mr. DaRosa be afforded continued immediate, meaningful recovery assistance.

Mr. DaRosa has committed himself to self-betterment over the past three years and worked hard to overcome his opioid addiction. However, he requires comprehensive substance abuse and mental health treatment in order to actually have a meaningful chance of successfully reintegrating with society and putting his past criminality and substance use behind him once and for all.

JONATHAN DAROSA
By his attorney,

/s/ John H. Cunha Jr.
John H. Cunha Jr.
B.B.O. No. 108580
cunha@cunhaholcomb.com
CUNHA & HOLCOMB, P.C.
One State Street, Suite 500
Boston, MA 02109-3507
Dated: April 28, 2025                    (617) 523-4300

## CERTIFICATE OF SERVICE

I, John H. Cunha Jr., hereby certify that I have caused to be served a copy of the within motion on this date by electronic mail through the ECF system, to AUSA Christopher Pohl, counsel for the United States.

/s/ John H. Cunha Jr.
John H. Cunha Jr.

11